# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| Capital One Financial Corporation, | |
| Plaintiff, | |
| v. | **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES** |
| John A. Kanas, | |
| and | |
| John Bohlsen, | Civil Action No. l:11-cv-750 (LO/TRJ) |
| Defendants. | |

## ANSWER TO THE AMENDED COMPLAINT

Defendants, John A. Kanas ("Kanas") and John Bohlsen ("Bohlsen") (collectively, "Defendants"), by and through their undersigned counsel, answer the Plaintiff's Amended Complaint as follows:

## INTRODUCTION

1. Defendants deny all averments contained in Paragraph One. This lawsuit – brought in the final year of a five year Non-Competition Covenant – is a transparent effort by Capital One to impede lawful competition by Kanas, Bohlsen, and BankUnited.[1] Kanas and Bohlsen have, at all times, complied with their obligations under the Non-Competition Covenant. In fact, until it filed this lawsuit, Capital One had not raised any objections to Kanas's,

---

[1] "BankUnited," as used in this Answer, refers to the federally chartered thrift institution BankUnited. "BankUnited, Inc." refers to the publicly traded Delaware corporation, BankUnited, Inc., which is the holding company for BankUnited. "BankUnited, FSB," refers to the BankUnited Federal Savings Bank, which is the entity that pre-existed BankUnited and certain assets of which were purchased and certain liabilities of which were assumed by Defendants, along with other investors, in May, 2009.

Bohlsen's, or BankUnited's activities, even though Kanas and Bohlsen were part of a group that purchased certain assets and assumed certain liabilities of BankUnited FSB more than two years ago. Capital One complains that Kanas and Bohlsen have made clear their intention to compete with Capital One in the Tri-State Area after August 2012; however, the Non-Competition Covenant does not, and cannot, prohibit Defendants from *planning* to compete in the Tri-State Area once the Non-Competition Covenant expires. Capital One also complains about Kanas's and Bohlsen's potential relationship with Herald National Bank ("Herald National"); however, the Non-Competition Covenant expressly permits Kanas and Bohlsen to be associated with such a corporation, provided that Kanas and Bohlsen are not providing services to that part of the corporation that competes with Capital One. BankUnited, Inc. has not even acquired Herald National yet, but, between the time it does and the time the Non-Competition Covenant expires, Kanas and Bohlsen will have no relationship with those aspects of Herald National that compete with Capital One. Indeed, BankUnited, Inc. has gone to great lengths to ensure that its potential acquisition of Herald National in no way violates the Non-Competition Covenant entered into between Capital One and Kanas and Bohlsen. Finally, Capital One makes many allegations which simply are untrue, such as Capital One's assertion that BankUnited has entered into leases for New York retail branches and its claim that Kanas placed a bid to acquire the Bank of Ireland loan pool. In all, Kanas and Bohlsen have done nothing more than prepare to compete in the Tri-State Area *after* the Non-Competition Covenant expires. Those actions are entirely appropriate and permissible.

2.      Defendants admit that they have made public statements about their plans to compete in the Northeast after the expiration of the Non-Competition Covenant. Defendants affirmatively state that making such statements does not violate the Non-Competition Covenant

and that, if the Non-Competition Covenant were interpreted so broadly as to cover such statements, it would be unenforceable under applicable law. Defendants otherwise deny all averments contained in Paragraph Two.

3. Defendants deny all averments contained in Paragraph Three.

4. Defendants admit that Plaintiff seeks certain relief, as set forth in Paragraph Four, but Defendants deny that Plaintiff is entitled to such relief, and Defendants otherwise deny all averments contained in Paragraph Four.

PARTIES

5. Defendants admit the averments contained in Paragraph Five.

6. Defendants admit the averments contained in Paragraph Six.

JURISDICTION AND VENUE

7. Defendants admit that this Court has subject matter jurisdiction, as set forth in Paragraph Seven.

8. Defendants admit that this Court has personal jurisdiction, as set forth in Paragraph Eight.

9. Defendants admit that venue is proper in this Court, as set forth in Paragraph Nine.

FACTUAL ALLEGATIONS

10. Because they lack knowledge about the matters set forth therein, Defendants deny the averments contained in Paragraph Ten.

**Merger with North Fork and Defendants' Tenure with Capital One**

11. Defendants admit that one definition of "consumer banking" is that it "generally consists of branch-based lending and deposit activities offered to individual consumers and small businesses, as well as auto and home loan lending and servicing activities." Defendants admit

that one definition of "commercial banking" is that it "generally comprises lending, deposit management, and treasury management services offered to commercial real estate and middle market customers." However, Defendants deny that such terms, as applied to the Non-Competition Covenant at issue here, may be expansively defined as to include virtually all such financial transactions, and Defendants otherwise deny all averments in Paragraph Eleven.

12. Defendants admit that North Fork Bancorporation, Inc. ("North Fork") owned commercial banks that offered certain consumer and commercial banking products from branches in New York, New Jersey, and Connecticut. Defendants otherwise deny all averments contained in Paragraph 12.

13. Defendants admit that, [i]n March 2006, Capital One and North Fork entered into an agreement and plan of merger wherein North Fork would be merged into Capital One. Defendants admit that "[t]his stock and cash transaction – valued at approximately $13.2 billion – was completed on December 1, 2006." Defendants admit that they received substantial consideration through stock purchases. Defendants affirmatively state that such consideration reflected a return on over thirty years of work they devoted to building North Fork. Defendants otherwise deny all averments contained in Paragraph Thirteen.

14. Because they lack knowledge of the matter, Defendants deny that "prior to the merger, Capital One had no commercial or retail banking presence in the State of New York." Defendants admit that, "[t]hrough the merger, Capital One acquired North Fork's banking presence in New York, New Jersey, and Connecticut, along with the goodwill, high-quality personnel base, and broad spectrum of customers that attended this successful business."

15. Defendants admit that, "[a]t the time of the merger, Kanas was the President, Chief Executive Officer, and Chairman of the Board of Directors of North Fork." Defendants

admit that Kanas had held these positions for over thirty years, as he cultivated strong relationships in the Northeast region and developed North Fork into one of New York's largest banking institutions. Because they lack knowledge of the matter, Defendants deny that "Capital One purchased North Fork in large part to acquire precisely this business and its goodwill." Because they lack knowledge of the matter, Defendants deny that Plaintiff "insisted upon noncompete protection precisely because it wished to protect the goodwill it had purchased."

16. Defendants admit that, at some point after the merger, "Kanas became the President of Capital One's banking operations and served on its Board of Directors." Defendants affirmatively state that Kanas left Plaintiff's employ in 2007. Defendants admit that Kanas received certain information about Plaintiff's operations and that some of that information was confidential and proprietary at the time it was received. Defendants otherwise deny all averments contained in Paragraph Sixteen.

17. Defendants admit that Bohlsen served on the North Fork Board of Directors as Vice Chairman for approximately fifteen years and that he served on the North Fork management team at the time it was acquired by Capital One.

18. Defendants admit that, "[a]fter North Fork was merged into Capital One, Bohlsen became an Executive Vice President of Capital One's Banking Business." Defendants affirmatively state that Bohlsen left Plaintiff's employ in 2007. Defendants admit that, "[i]n that position, Bohlsen led the Commercial Banking division of Capital One's banking subsidiary, which included the former North Fork business." Defendants admit that Bohlsen received certain information about Plaintiff's operations and that some of that information was confidential and proprietary at the time it was received. Defendants otherwise deny all averments contained in Paragraph Eighteen.

19.     Defendants admit that they participated in business activities in Virginia as employees of Plaintiff, but Defendants deny that they personally transacted business in Virginia. Defendants admit that, "[a]s a director of Capital One, Kanas personally attended meetings of the Capital One Board of Directors, as well as meetings of the Capital One Executive Committee, which were held at the Corporate Headquarters of Capital One in McLean, Virginia. Defendants admit that, "[a]s a senior executive, Bohlsen led Capital One's Commercial Banking Division, including Capital One Direct Bank in Richmond, VA." Defendants otherwise deny all averments contained in Paragraph Nineteen.

**Agreements Between Capital One and Defendants**

20.     Defendants admit that, "[o]n March 12, 2006, simultaneous and in connection with the merger, Kanas and Bohlsen each executed a binding Restricted Share Agreement . . . with Capital One that was contingent on the merger's ultimate consummation." Defendants deny that "Kanas and Bohlsen were each represented by experienced counsel." Defendants affirmatively state that North Fork was represented by counsel. Defendants admit that "Kanas's agreement granted to him $24 million in restricted shares of Capital One common stock." Defendants admit that "Bohlsen's agreement granted to him $18 million in restricted shares of Capital One common stock." Defendants affirmatively state the stock provided in both agreements was subject to vesting requirements. Because they lack knowledge on the matter, Defendants deny that Plaintiff "provided the common stock to Defendants to ensure their continued dedication to Capital One and to protect the goodwill Capital One had purchased as an essential element of the merger."

21.     Defendants admit that the terms set forth in Paragraph Twenty-One are part of the Restricted Share Agreement ("RSA").  Defendants otherwise deny all averments contained in Paragraph Twenty-One.

22.     Defendants admit that the RSA contained restrictions on competition.  Defendants otherwise deny all averments contained in Paragraph Twenty-Two.

23.     Defendants admit that the RSA contained restrictions on competition.  Defendants admit that they had access to certain information, which, at the time they received it, was confidential.  Defendants admit that they performed services in their positions with Plaintiff that involved certain of the Competitive Businesses.  Defendants otherwise deny all averments contained in Paragraph Twenty-Three.

24.     Defendants admit that the language quoted in Paragraph Twenty-Four is part of the RSA.  Defendants otherwise deny all averments contained in Paragraph Twenty-Four.

25.     Defendants admit that the RSA contained restrictions for a five year period on certain activities involving Competitive Businesses.  Defendants deny that applicable law would have barred them from engaging in any Competitive Business during such period.  Defendants otherwise deny all remaining averments contained in Paragraph Twenty-Five.

26.     Defendants admit that, in July 2007, they entered into an early separation agreement ("Separation Agreement") with Plaintiff.  Defendants affirmatively state that Plaintiff requested that Defendants enter into that agreement following a board meeting during which Kanas questioned the direction of Plaintiff's business.  Defendants affirmatively state that the Separation Agreement was drafted by Plaintiff.  Defendants otherwise deny all averments contained in Paragraph Twenty-Six.

27.    Defendants admit that, on July 9, 2007, they entered into a Separation Agreement, which superseded the RSA.  Defendants admit that they received shares of stock of approximately the fair market value described in Paragraph Twenty-Seven.  Defendants admit that Exhibits C and D contain the terms of the Separation Agreement.  Defendants otherwise deny all averments contained in Paragraph Twenty-Seven.

28.    Defendants admit that the Separation Agreement narrowed the scope of the RSA's restrictive covenants, which broadly restricted competition throughout the United States.  Defendants admit that the language quoted in Paragraph Twenty-Eight is part of the Separation Agreement, which is set forth in full in Exhibits C and D to the Amended Complaint.  Defendant otherwise denies all averments contained in Paragraph Twenty-Eight.

29.    Defendants admit that the non-competition provisions in the Separation Agreement ("the Non-Competition Covenant") are set to expire on August 7, 2012.  Defendants admit that the Separation Agreement narrowed the geographic scope of the non-competition restrictions as well as the types of conduct that would constitute impermissible competition.  Defendants otherwise deny all other averments containing in Paragraph Twenty-Nine.

30.    Defendants admit that the language quoted in Paragraph Thirty is found in the Separation Agreement, which is set forth in full in Exhibits C and D to the Amended Complaint.  Defendants admit that the Non-Competition Covenant contains three exceptions.  Defendants affirmatively note that the exceptions contained in ¶ 2(e) of Annex B of the Separation Agreement authorize the conduct of which Plaintiff complains in this lawsuit.

31.    Defendants admit that the language quoted in Paragraph Thirty-One appears in the Separation Agreement, which is set forth in full in Exhibits C and D to the Amended Complaint.  Defendants affirmatively state that similar language appeared in ¶ 4 of Annex B of

the RSA, which contained broader non-competition restrictions. Defendants affirmatively state that such boilerplate recitations do not and cannot expand the limitations that applicable law places upon restrictions of future competition.

32.     Defendants admit that the language quoted in Paragraph Thirty-Two appears in the Separation Agreement, which is set forth in full in Exhibits C and D to the Amended Complaint. Defendants affirmatively state that the language quoted in Paragraph Thirty-Two does not and cannot change the applicable law as to the requirements for relief. Defendants otherwise deny all averments contained in Paragraph Thirty-Two.

33.     Defendants admit that the language quoted in Paragraph Thirty-Three is part of the Separation Agreement, which is provided in full in Exhibits C and D of the Amended Complaint. Defendants otherwise deny all averments in Paragraph Thirty-Three.

34.     Defendants admit that the language quoted in Paragraph Thirty-Four is part of the Separation Agreement, which is provided in full in Exhibits C and D of the Amended Complaint, and admit Capital One paid $200,000 to each of the Defendants. Defendants otherwise deny all averments in Paragraph Thirty-Four.

35.     Defendants admit that the Separation Agreement provided them with rights to use office space, compensation, and other perquisites. Defendants otherwise deny all averments contained in Paragraph Thirty-Five.

36.     Defendants admit that Separation Agreement called for Defendants to provide limited advisory services to Plaintiff. Defendants deny all other averments contained in Paragraph Thirty-Six.

**Kanas and Bohlsen Join BankUnited**

37.     Defendants deny that "Defendants, as members of a group of investors, purchased BankUnited, FSB" in May 2009. Defendants affirmatively state that they were part of an investor group that purchased certain assets and assumed certain liabilities of BankUnited, FSB in May 2009. Defendants admit that, at the time of the investment, "the Florida-based bank had failed and was placed in receivership by federal regulators." Defendants admit that the investor group raised approximately $945 million in capital of which approximately $900 million was used in the purchase of certain assets and assumption of certain liabilities of BankUnited, FSB. Defendants otherwise deny all averments contained in Paragraph Thirty-Seven.

38.     Defendants admit to all averments contained in Paragraph Thirty-Eight.

39.     Defendants affirmatively state that, as reported in the Form S4 filing on July 13, 2011, Kanas is the beneficial owner of 5,555,820 shares of BankUnited, Inc. stock which constitutes approximately 5.7% of the stock outstanding, and that Bohlsen is the beneficial owner of 2,713,011 of BankUnited, Inc. stock, which is approximately 2.8% of the stock outstanding. Defendants otherwise deny all averments contained in Paragraph 39.

40.     Defendants admit that, "[a]fter acquiring BankUnited, Kanas was named Chairman of the Board of Directors, President, and Chief Executive Officer of the company." Because they lack knowledge as to the matters, Defendants otherwise deny all averments contained in Paragraph Forty.

41.     Defendants admit to all averments contained in Paragraph Forty-One.

**BankUnited's Activities in the New York Market**

42.     Defendants admit that it is "perfectly appropriate for Kanas and Bohlsen to compete with Capital One in New York after the expiration of the Non-Competition Period."

Defendants affirmatively state that the exception contained in ¶ 2(e)(ii) of Annex B to Separation Agreement permits them to associate with a Competitive Business in New York during the Non-Competition Period. Defendants admit that BankUnited, Inc. filed the cited registration statement with the SEC. Defendants affirmatively state that the quoted portion of that SEC filing states, in full, as follows: "Over time, we will look to expand our branch network outside of Florida in selected markets such as New York, where our management team has had significant experience and has the competitive advantage of having managed one of the most successful regional banks in that market. However, for a limited period of time, certain of our executive officers are subject to non-compete agreements which may restrict them from operating in some of these selected markets." BankUnited, Inc., Form S–1, at 5 (Oct. 29, 2010). Defendants otherwise deny all averments contained in Paragraph Forty-Two.

43.     Defendants admit that BankUnited, Inc.'s filings with the SEC state: "[F]or a limited period of time, certain of our executive officers are subject to non-compete agreements which may restrict them from operating in some of these selected markets." Because they lack knowledge of the matter, Defendants deny that unidentified press releases contain "acknowledge[ments] that [Kanas] cannot compete in New York, New Jersey, or Connecticut markets because of Defendants' covenants not to compete." Defendants affirmatively state, pursuant to ¶2(e)(ii) of Annex B to the Separation Agreement, the Non-Competition Covenant does not restrict them from associating with Competitive Businesses in the New York, New Jersey, and Connecticut markets before expiration of the Non-Competition Period. Defendants otherwise deny all averments contained in Paragraph Forty-Three.

44.     Defendants admit that Kanas is quoted in the *South Florida Business Journal* as stating, "I've banked in New York City for many years, and I have a decent-size following of

people there who eventually will become customers of Bank United." Defendants affirmatively state that the same article states: "North Fork was so concerned about Kanas' pull with customers that it signed a non-compete agreement with him for the New York area that runs until August 2012. Kanas will adhere to that agreement by keeping Herald National Bank as a separate subsidiary from BankUnited and under separate leadership until the non-compete expires." Defendants affirmatively state that the Non-Competition Covenant does not, and cannot, prevent Defendants from expressing their intention to compete in New York once the Non-Competition Period expires. Defendants otherwise deny all averments contained in Paragraph Forty-Four.

45.    Defendants admit that the cited article in *American Banker* states: "[Kanas] expects to open half a dozen branches in Manhattan on Aug. 7, 2012, the day after the noncompete expires, and then add another dozen or so over the next three years." Defendants admit the existence of the Non-Competition Covenant but affirmatively state that the Non-Competition Covenant does not, and cannot, prevent Defendants from expressing their intent to compete in New York once the Non-Competition Period expires. Defendants otherwise deny all averments contained in Paragraph Forty-Five.

46.    Defendants admit that "[t]he BankUnited, FSB banking portfolio contained mortgages issued on property located in New York and New Jersey at the time Defendants acquired that entity's assets." Defendants deny that their "acquisition and management of these mortgage assets placed BankUnited in direct competition with commercial and real estate loans marketed by Capital One in New York." Defendants deny that they had any involvement in renegotiating the terms of any of these mortgages. Defendants otherwise deny all averments contained in Paragraph Forty-Six.

47. Defendants admit that BankUnited has acquired on the secondary mortgage market real estate loans that are in New York or New Jersey. Defendants otherwise deny all averments contained in Paragraph Forty-Seven.

48. Defendants admit that the quoted *South Florida Business Journal* article states: "[Kanas] said he will use his business contacts in the Northeast to find many investors eager to make deals in South Florida." Defendants otherwise deny all averments contained in Paragraph Forty-Eight.

49. Defendants deny all averments contained in Paragraph Forty-Nine.

50. Defendants admit that they intend to compete in the New York market after the Non-Competition Period expires. Defendants admit that they have looked for potential locations in New York, but Defendants deny that they have entered into any leases for local bank branch locations. Defendants admit that they have stated their intention to open branches in New York, but only when the non-competition provisions in the Separation Agreement expire. Defendants admit that they have posted advertisements for jobs, and affirmatively state that such advertising is expressly permitted. Defendants deny that they have spoken to the media to publicize "the imminent opening of BankUnited's New York branches," unless "imminent" refers to August 2012, after the Non-Competition Period expires, in which case Defendants admit this statement. Defendants admit that they have looked for space in New York City, but Defendants otherwise deny all averments contained in Paragraph Fifty.

51. Defendants deny all averments contained in Paragraph Fifty-One.

**United Capital**

52. Defendants admit the averments contained in Paragraph Fifty-Two. Defendants affirmatively state that "North Fork's lending to New York's chefs and restaurants" amounted to

less than one percent of North Fork's assets and that such lending was made to stand-alone operations, not franchises.

53. Defendants admit that "in addition to his duties for BankUnited, Bohlsen serves as the Director of the wholly owned subsidiary United Capital Business Lending, Inc. ('United Capital')." Defendants affirmatively state that Bohlsen is not the only director; additional directors have been appointed. Defendants admit that "United Capital is a Delaware Corporation that has its headquarters in Hunt Valley, Maryland." Defendants affirmatively state that United Capital's "primary focus" is the franchise business, not "the restaurant industry." Defendants otherwise deny all averments contained in Paragraph Fifty-Three.

54. Defendants admit that United Capital's business includes loans outstanding to certain businesses in the New York, New Jersey and Connecticut areas, including those alleged in Paragraph Fifty-Four. Defendants affirmatively state that United Capital is a minor, third-tier subsidiary of BankUnited, Inc., and that such loans often were part of existing lending relationships of United Capital's predecessor. Defendants affirmatively state that John Bohlsen has not been involved in such lending relationships. Defendants otherwise deny the allegations of Paragraph Fifty-Four.

55. Defendants deny all averments contained in Paragraph Fifty-Five.

**Herald National Bank**

56. Defendants admit to all averments contained in Paragraph Fifty-Six.

57. Defendants admit that, on or around June 2, 2011, BankUnited, Inc., entered into an agreement, subject to regulatory approval, for acquisition of Herald National. Defendants admit that it is anticipated that the transaction will close in the fourth quarter of 2011 if all regulatory approvals are obtained. Defendants affirmatively state that they will not be involved

in the management or direction of Herald National before the expiration of the non-competition provisions in their Separation Agreement. Defendants admit that the cited *Wall Street Journal* article states: "The former CEO of Melville, N.Y. – based North Fork Bank has made no secret of his desire to return to the Empire State since buying BankUnited with Blackstone Group, Carlyle Group and W.L. Ross & Co. in 2008." Defendants admit that BankUnited filed a Form 8–K with the SEC to announce the merger with Herald National and that the Chief Operating Officer of BankUnited stated that "[t]he acquisition of Herald is an important step toward expanding the reach of BankUnited into the New York market." Defendants admit that they intend to compete in the Northeast after expiration of the Non-Competition Period. Defendants otherwise deny all averments contained in Paragraph Fifty-Seven.

58. Defendants admit that BankUnited, Inc., announced that Herald National will be managed by a structure that will exclude Defendants from providing any services to Herald National prior to the expiration of the non-competition provisions contained in the Separation Agreement. Defendants affirmatively state that such activity is expressly authorized by ¶ 2(e)(ii) of Annex B to the Separation Agreements, contained in Exhibits C and D to the Amended Complaint. Defendants admit that the block quote contained in Paragraph Fifty-Eight appears in the Form 8–K cited in that Paragraph. Defendants admit that Singh, formerly an Executive Vice President of Plaintiff during Defendants' tenure, was also head of corporate strategy and development for North Fork under Kanas's leadership. Defendants otherwise deny all averments contained in Paragraph Fifty-Eight.

59. Defendants admit that Kanas engaged in certain conversations to advise BankUnited, Inc., in its negotiations to acquire Herald National. Defendants admit that the quoted *Wall Street Journal* article states: "Mr. Kanas repeatedly had said he wanted to

reproduce his New York success with BankUnited in Florida, and he long had been expected to return to New York." Defendants otherwise deny all averments contained in Paragraph Fifty-Nine.

60. Defendants admit that the language quoted in Paragraph Sixty is contained in the Form 8–K cited in that Paragraph. Defendants admit that they know certain Herald National employees, officers, and directors. Defendants otherwise deny all averments contained in Paragraph Sixty.

61. Defendants admit that "this is not the first time a bank managed by Kanas has acquired a bank led by Nielsen." Defendants admit that Kanas and Nielsen served together on the North Fork Board of Directors. Defendants admit that the *Wall Street Journal* article cited in Paragraph Sixty-One contains the language quoted in that Paragraph. Defendants affirmatively state that the quotation contained in Paragraph Sixty-One does not contain the entire text of the quoted portion of the article, which also says: "But when Mr. Kanas left Capital One, he signed a noncompete agreement for New York that doesn't expire until 2012[.]" Defendants otherwise deny all averments contained in Paragraph Sixty-One.

62. Defendants deny the averments contained in Paragraph Sixty-Two.

63. Defendants admit that BankUnited, Inc. is interested in the potential acquisition of other banks in New York. Defendants affirmatively state that any such acquisitions would be done in compliance with the exception contained in ¶2(e)(ii) of the Non-Competition Covenant. Defendants admit that the cited article from *The Deal Magazine* states: "So BankUnited is keeping an eye out for banks in Florida and New York 'with good assets, good locations, management talent, performing C&I loans and core deposits,' says Kanas." Defendants affirmatively state that the Non-Competition Covenant does not, and cannot, prevent them from

planning to compete in New York once the Non-Competition Period expires. Defendants otherwise deny all allegations contained in Paragraph Sixty-Three.

64. Defendants deny all averments contained in Paragraph Sixty-Four. Defendants affirmatively state that their actions have at all times been done in compliance with the Non-Competition Covenant and its exceptions. Defendants further affirmatively state that, if the Non-Competition Covenant were construed as broadly as Plaintiff wishes, then it would constitute an unreasonable restraint on competition and would be impermissible under applicable law.

**CLAIM FOR RELIEF**
**(Breach of Contract)**

65. Paragraph Sixty-Five realleges previous statements and does not require a response from Defendants. Defendants incorporate herein all prior responses.

66. Defendants deny all averments contained in Paragraph Sixty-Six.

67. Defendants admit that they received consideration for the promises made in the Separation Agreements. Defendants deny all other averments contained in Paragraph Sixty-Seven. Defendants affirmatively state that, if the restrictive covenants contained in the Separation Agreement were interpreted as Plaintiff proposes, those restrictions would be anticompetitive, unreasonable, and unlawful.

68. Defendants deny all averments contained in Paragraph Sixty-Eight.

**Mortgage and Restaurant Competition**

69. Defendants admit that, along with a group of investors, they purchased some of the assets and assumed certain of the liabilities of BankUnited, FSB. Defendants admit that BankUnited, FSB's, portfolio contained certain commercial loans in New York and New Jersey. Defendants admit that BankUnited has renegotiated the terms of several commercial mortgages.

Defendants affirmatively state that they had no personal involvement in renegotiating any of these mortgages. Defendants otherwise deny all averments contained in Paragraph Sixty-Nine.

70. Defendants admit that BankUnited has been assigned mortgages on New York and New Jersey property since Kanas and Bohlsen became directors, officers, and stockholders or investors in BankUnited, Inc. Defendants affirmatively state that they have had no involvement with such mortgages, deny that such activities constitute a breach of the Non-Competition Covenant, and otherwise deny all averments contained in Paragraph Seventy.

71. Defendants deny all averments contained in Paragraph Seventy-One.

72. Defendants deny all averments contained in Paragraph Seventy-Two.

73. Defendants deny all averments contained in Paragraph Seventy-Three.

**BankUnited's New York Branches**

74. Defendants deny all averments contained in Paragraph Seventy-Four.

75. Defendants admit that the cited article from *American Banker* says: "[Kanas] expects to open half a dozen branches in Manhattan on Aug. 7, 2012, the day after the noncompete expires, and then add another dozen or so over the next three years." Defendants otherwise deny all averments contained in Paragraph Seventy-Five.

76. Defendants deny all averments contained in Paragraph Seventh-Six.

**Bank of Ireland Portfolio**

77. Defendants deny all averments contained in Paragraph Seventy-Seven.

78. Defendants deny all averments contained in Paragraph Seventy-Eight.

**The Herald National Merger**

79. Defendants deny all averments contained in Paragraph Seventy-Nine.

80. Defendants deny all averments contained in Paragraph Eighty.

81.     Defendants deny all averments contained in Paragraph Eighty-One.

82.     Defendants deny all averments contained in Paragraph Eighty-Two.

83.     Defendants deny all allegations contained in Paragraph Eighty-Three.

84.     Defendants admit that the language quoted in Paragraph Eighty-Four is part of the Separation Agreement.  Defendants otherwise deny all averments contained in Paragraph Eighty-Four.

## AFFIRMATIVE DEFENSES

Defendants, by and through their undersigned counsel, hereby submit the following affirmative defenses:

1.     **Void as Against Public Policy**:  If the Non-Competition Covenant were construed and interpreted as broadly as Plaintiff contends it should be, then the Non-Competition Covenant constitutes an unreasonably broad restraint on competition and stands in violation of public policy.

2.     **Impermissible Restrictions on BankUnited:** If the Non-Competition Covenant were construed to prohibit BankUnited from engaging in activities that do not involve Defendants' personal involvement, then the Non-Competition Covenant constitutes an unreasonably broad restraint on competition and stands in violation of public policy.

3.     **Waiver & Estoppel:** Plaintiff has waived the allegations contained in the Amended Complaint and is estopped from asserting them now.  Plaintiff knew or should have known of Defendants' activities with respect to BankUnited, yet Plaintiff never objected to those activities.  In addition, Plaintiff expressly manifested its consent to BankUnited engaging in activity that, under Plaintiff's claims in its Amended Complaint, would constitute impermissible competitive business.

4. **Lack of Protectible Interest:** Plaintiff has not alleged, and cannot show, that Defendants have used or are likely to use any of Plaintiff's proprietary or confidential information. Plaintiff therefore lacks any protectable interest.

5. **Excessive Duration:** The Non-Competition Covenant is unenforceable because of its excessive duration.

6. **Express Contract:** Plaintiff's claims are barred by ¶ 2(e)) of Annex B to the Separation Agreement, which, among other things, authorizes Defendants to work for a company engaged in a Competitive Business provided that Defendants do not personally provide services to the portion of the business which is a Competitive Business.

7. **Failure to Mitigate**: Plaintiffs have failed, and are failing, to mitigate any damages allegedly suffered by Defendants' activities, if any such damages in fact exist.

8. **Proximate Causation:** Any damages Plaintiff allegedly has suffered are not the proximate cause of Defendants activities, as Plaintiff has not alleged, and cannot show, that Plaintiff has any interest in the Bank of Ireland portfolio or in Herald National Bank or that Plaintiff otherwise negatively has been affected by any of the conduct of which it complains.

9. **Unclean Hands:** Any claim for injunctive relief is barred by the unclean hands of Plaintiff, which seeks to use the Non-compete Agreement to unreasonably restrict competition. In addition, any claim for injunctive relief is also barred by the unclean hands of Plaintiff, who attempted to enforce against Defendants an unreasonably broad restriction on competition throughout the United States in the form of the RSA.

10. **Laches:** Plaintiff's claims are barred in whole or in part by laches as Plaintiff failed to timely object to many of the activities about which it now complains, including

Defendants' associations with the investor group that acquired BankUnited, FSB and their management positions with BankUnited, Inc. and Defendants relied on Plaintiff's inaction.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter an Order which does the following:

A.    Dismisses Plaintiff's Amended Complaint with prejudice.

B.    Requires Plaintiff to pay all of the costs and fees incurred by Defendants in litigating this action.

C.    Provides to Defendants any other relief that the Court considers just.

## JURY TRIAL DEMAND

Defendants demand a jury trial on all issues triable to a jury.


Dated:  August 17, 2011                    Respectfully submitted,


                                           /s/  James H. Rodio
                                           James H. Rodio, PLC
                                           Virginia Bar No. 20139
                                           2121 Eisenhower Ave., Suite 300
                                           Alexandria, Virginia  22314
                                           Telephone: 703 549-2288
                                           Facsimile:  703 562-7011
                                           Email: jimrodio@rodiolaw.com

                                           David Boies
                                           *Pro hac vice* motion to be filed
                                           BOIES SCHILLER & FLEXNER LLP
                                           333 Main Street
                                           Armonk, New York  10504
                                           Telephone: 914.749.8200
                                           Facsimile:  914.749.8300
                                           Email: dboies@bsfllp.com

Stuart H. Singer
*Pro hac vice* motion filed
BOIES SCHILLER & FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
Facsimile: 954.356.0022
Email: ssinger@bsfllp.com

Matthew W. Friedrich
*Pro hac vice* motion filed
David Ellis
Virginia Bar No.: 74860
BOIES SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. N.W.
Washington D.C. 20015
Telephone: 202.274.1113
Facsimile: 202.237.6131
Email: mfriedrich@bsfllp.com

*Attorneys for Defendants John A. Kanas and John Bohlsen*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of August, 2011 I electronically filed the foregoing Answer to the Amended Complaint with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jason Craig Schwartz
Gibson Dunn & Crutcher LLP
1050 Connecticut Ave NW
Washington, DC 20036-5306
jschwartz@gibsondunn.com

/s/ James H. Rodio
James H. Rodio
James H. Rodio, PLC
Attorney for John A Kanas and
John Bohlsen
Virginia Bar No. 20139
2121 Eisenhower Ave. Suite 300
Alexandria, Virginia 22314
Phone:     703 549-2288
Facsimile: 703 562-7011
Email: jimrodio@rodiolaw.com