**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| Capital One Financial Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.  1:11 CV 750 (LO/TRJ) |
| | ) | |
| John A. Kanas and John Bohlsen, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR**
**EXTENSION OF TIME TO COMPLETE DISCOVERY**

Defendants John A. Kanas and John Bohlsen respond to plaintiff Capital One Financial

Corporation's ("Capital One") motion for a six-week extension of time to complete discovery.

While Defendants can be prepared to proceed with completing discovery on the schedule set by

the Court, they do not oppose a brief extension of the discovery deadline in order to allow for the

more orderly completion of depositions.  Defendants submit this brief to respond to the

numerous unfounded allegations made by Capital One in its motion.

**Introduction**

The Court will remember that at the Rule 16(b) conference held on November 9—long

before any of the supposed "dilatory" discovery conduct about which Capital One complains in

its motion—Capital One's counsel alerted the Court that Capital One would likely seek an

extension of the discovery deadline.  The Court advised Capital One's counsel that" the

discovery deadline is the discovery deadline."  Apparently having decided that the best way to

get the extension is to blame Defendants for supposedly delaying discovery, Capital One at five

1

o'clock on the eve of the New Year's holiday weekend, filed such a motion.   Contrary to Capital One's statements:

- The principal complaint of Capital One is that BankUnited's document production will not be substantially complete until January 13, 2012, whereas Capital One claims its own document production was substantially completed on December 30, 2011, the date on which they filed their motion.  As a result of this two week difference in the dates on which document production would be substantially complete, Capital One claims they are unable to timely complete depositions.  Yet, at the same time, Capital One has refused to produce any of the three witnesses requested by Defendants for deposition earlier than January 25, 2012.

- Defendants and BankUnited have worked together to review over 120,000 documents, constituting an estimated 1,000,000 pages, from 25 different custodians, and have produced over 188,000 pages to Capital One (Marks Declaration at ¶ 24-25) —*a production that, until the day before Capital One filed its motion, exceeded the production made by Capital One*.[1] To accomplish this large production, over 20 attorneys worked to review BankUnited's documents for production, including over the holidays.

- The principal reason BankUnited's document production will take two weeks longer than Capital One's to be substantially complete is that Capital One has insisted on overly broad search terms that would require the review of any document that mentions the terms New York, New Jersey, or Connecticut, (See Marks Declaration at ¶ 4-20.)

---

[1] While Plaintiff claims Defendants separately produced only twenty pages of documents, Plaintiff knows full well that Defendants documents are almost entirely within the production of thousands of documents by BankUnited.

Indeed, BankUnited's production would have been substantially completed by December 30, the same day as Capital One claims to have substantially completed its production, but for these broad and unreasonable search requests. While Defendants have informed Capital One that they will enter into appropriate fact stipulations that will make these broad searches unnecessary, Capital One has not withdrawn or narrowed these requests.

- For their part, and contrary to Capital One, so as to expedite discovery and avoid requiring Capital One review an excessive number of documents (which, for some unknown reason, it chose to do in any event) Defendants voluntarily narrowed or withdrew certain of their document requests. (Sires Dec. at ¶ 4 ). Defendants also indicated they were willing to narrow other such requests if Capital One indicated that they were returning undue numbers of hits.

- Defendants have also cooperated in the production of thousands of additional pages of documents in response to the twenty-seven third-party subpoenas Capital One served on BankUnited's affiliates and related parties. Indeed, most of these parties have completed production or are in the process of doing so, notwithstanding the excessive number of subpoenas issued by Capital One.

Capital One's motion is simply a thinly-veiled attempt to gain more time to conduct a fishing expedition for evidence that supports its claims. However, Capital One chose to file this action, and chose to file it in this District, where it knew the Court would move the case quickly to trial. Capital One's attempt to blame Defendants for its need for an enlargement of the discovery deadline is without merit.

<u>Argument</u>

### 1.   Background of the Case

Capital One begins by claiming this is "complex commercial litigation." (Memo at 1.)  In reality, this is a straight-forward breach of contract case, involving one count of breach by two defendants of a non-compete agreement, and no counterclaims.  Capital One proceeds to characterize the case in a manner that is not factually accurate,[2] but which, in any event, is not relevant to the relief requested by the motion.

### 2.   Document Production Issues

BankUnited has fully cooperated in the discovery process by collecting documents from the 25 different custodians identified by Capital One,[3] by reviewing over 120,000 documents comprising an estimated one million pages, and by producing over 188,000 pages to Capital One.  (Marks Dec at ¶ 24-25.)  Contrary to Capital One's assertion that Defendants have delayed discovery so as to delay its depositions of Defendants, BankUnited prioritized the production of documents from the custodial files of Kanas, Bohlsen, and Singh, and each of their assistants, so that they were produced first in the course of the agreed-upon rolling production.  (Marks Dec. at

---

[2] For example, Capital One says Defendants netted hundreds of millions of dollars in payments and tax gross ups, when, in fact, Defendants were paid value for stock in an institution they had spend decades in building. Capital One says Defendants accepted an "additional $40 million to refrain from competing directly," (Memo at 1) whereas that Capital One stock was provided to induce Defendants to work for Capital One, which they did until Capital One requested their resignations. Capital One refers to the proposed acquisition of Herald National, but does not mention it is being done pursuant to an express carve out from the non-compete allowing defendants to be associated with a company that engages in a competitive business so long as they are not providing services to that part of the business. That is precisely how the Herald National transaction is structured for the remaining 8 months or less before the covenants expire. Later, Plaintiff says that BankUnited made a pre-auction bid for Bank of Ireland's banking portfolio, which is false.

[3] Capital One's complaint that BankUnited refused to search for a custodian's documents is not accurate. (*See* Motion at 18.)  BankUnited agreed to produce responsive documents as to all custodians requested identified by Capital One.  It was only last week that Capital One sought to add another custodian to the list.

¶ 23, Sires Declaration at ¶ 5.)  These *facts* alone demonstrate that Capital One's accusations of dilatory discovery conduct are untrue.

At the heart of this dispute is Capital One's request that BankUnited and Defendants produce any document that merely include the names "New York," "New Jersey," or "Connecticut" (the "NY/NJ/CT terms").  Despite BankUnited's clear and repeated objections to those broad discovery requests—objections that were supported with factual data about the number of irrelevant documents the searches turned up—Capital One refused to narrow the proposed search terms, arguing that any document that mentions one of those states could hypothetically contain evidence of improper competition by Defendants. (Marks Declaration at ¶ 13.)   Yet, at the same time it refused to narrow the requests, Capital One did not follow Defendants' counsel's suggestion in December (after numerous meet and confers proved futile) that the matter be teed up for resolution by the Magistrate Judge.

Only late last evening, in fact, has Capital One agreed to certain restrictions on the otherwise broad search terms it has insisted upon.  These proposed limitations are being considered by Defendants and BankUnited immediately, in hopes of resolving by agreement this issue with respect to the scope of the search terms for documents that include a reference to New York, New Jersey or Connecticut.

Although not mentioned in Capital One's motion, the fact remains that BankUnited has diligently produced documents resulting from the over-forty agreed-upon search terms issued by Capital One.  Indeed, as of December 23, 2011, BankUnited had produced more documents than

had Capital One.[4] This significant production of documents resulting from the more targeted search terms promoted efficient discovery, with the objective of allowing Capital One to first review the documents most likely to be relevant, particularly with respect to its requested deponents. In fact, BankUnited used electronic filters built into the review platform to prioritize the review and production of documents from the custodial files of Kanas, Bohlsen, Singh and each of their assistants. Of course, such steps were taken to promote discovery of the most relevant information, not to delay it.

Moreover, unlike Capital One, Defendants have done everything possible to narrow their discovery requests, and have simply withdrawn others, in order reduce Capital One's production burden and expedite production. (Sires Dec. at ¶ 4.) For example, at a meet and confer on December 6, Defendants agreed to withdraw or suspend nine of their search terms that Capital One represented had a large number of "hits," indicating that they were overbroad. (Sires Dec. at ¶ 4.) Defendants also agreed to significantly reduce the scope of other search terms. (Sires Dec. at ¶ 4.) Indeed, upon being informed that Capital One was reviewing a million documents, Defendants offered to further restrict document searches so as not to have hundreds of thousands of meaningless documents produced. (Sires Dec. at ¶ 4.) Based on Capital One's representations at the time, such a significant reduction of Defendants' search terms should have dramatically reduced the number of documents Capital One had to review. In sum, while Defendants have consistently acted to reduce the scope of production so that the discovery timetable could be met, Capital One has done the exact the opposite.

---

[4] While this production included a small number of documents belonging to the Defendants, it is hardly surprising that the Defendants have few responsive documents independent of their employment-related documents already produced by BankUnited, as Capital One has been advised. (Sires Dec. at ¶ 6.)

### 3. Deposition Dates

In its motion, Capital One makes several red-herring arguments, all in an attempt to place Defendants and BankUnited in a bad light.  For example, Capital One complains that "BankUnited's failure to produce documents until mid-January mean[s] that the first possible date defendants have offered for depositions is January 23, 2012."[5] (Motion at 14.)  Yet, the facts make clear that Defendants have not attempted to delay depositions, while Capital One has refused to provide suitable dates for the depositions of its principal witnesses.

For example, on December 7, Defendants asked Capital One for deposition dates for John Finneran, a key witness who is Capital One's general counsel and the individual who largely negotiated the non-compete agreements.  Despite being told in early December that Defendants wanted to depose Finneran in early January, Capital One took the position there was not a single date prior to January 25 on which Finneran was available for deposition.[6] (Sires Dec. at ¶ 13.) When Plaintiff refused to provide an earlier date, Defendants exercised their right to notice the deposition for January 6, although, indicating that the date was subject to being adjusted by mutual agreement.

 Meanwhile, the sole dates offered by Capital One for other witnesses requested by Defendants have been January 26th (in California) for Lynn Pike and January 27th in New York for Michael Slocum.  Further, Capital One peremptorily objected to a deposition of its CEO,

---

[5] Given Capital One's position that it did not want to depose witnesses until 10 days after document production was substantially complete, however, scheduling depositions of Defendants or BankUnited prior to mid-January became practically a moot point even if production had been substantially completed by year-end.

[6] By contrast, Defendant Kanas made himself available for deposition on January 12, a date that had to be changed only because defense counsel responsible for the deposition was summoned to appear in court in San Francisco.

Richard Fairbank, even though he had extensive dealings with Defendants related to their service at, and departure from, Capital One.  In order to resolve this issue, Defendants agreed to pursue other discovery before seeking Mr. Fairbank's deposition at the end of the discovery process. (Sires Dec. at ¶ 15.)

The parties and BankUnited have also exchanged topics for Rule 30(b)(6) depositions of Capital One and BankUnited, and have been working to agree upon dates and witnesses for those depositions in January and early February.  (Sires Dec. at ¶16.)  Finally, while Capital One points to the three expert witnesses for Defendants who will need to be deposed, along with Capital One's own two experts, the fact that these depositions  would be required to be completed in a brief period of time was known all along as part of the agreed discovery and pretrial schedule.[7]  In short, Defendants believe the parties will find a way, albeit perhaps not a comfortable one, to complete deposition discovery if the requested enlargement of time is denied.  Nevertheless, Defendants do not oppose a brief enlargement of the discovery period as requested by Capital One to allow these depositions to be taken in a more orderly fashion.

### 4.  Proposed Stipulations of Fact

Capital One argues that Defendants' failure to respond to its proposed stipulated facts has delayed discovery.   In the first place, Capital One did not object to Defendants' indication that they would respond during the week of January 3, 2012 to the proposed fact stipulations. Defendants had already indicated that a number of requested stipulations would require substantial work to complete, including stipulations on the number and dollar values of loans. Although Capital One has inquired when the responsive proposed stipulation would be provided,

---

[7] Capital One says their experts had to submit reports before any documents were produced by BankUnited or Defendants, ignoring that not a single document had been produced by Capital One before that date either.

it never objected that the process was taking too long or that the proposed delivery of such stipulations during the week of January 3, 2012 was unacceptable or would delay discovery.  The issue has only arisen as Capital One has sought to embellish its argument for an enlargement of time. Nor does the stipulation Capital One proposed serve the intended purpose of significantly reducing discovery. Capital One has not, for example, withdrawn onerous document requests requiring review of hundreds of thousands of documents, nor indicated that the willingness of the Defendants to enter into stipulations would affect its position on the disputed search terms relating to NY-NJ-CT documents.  (Marks Dec. at ¶ 10-20, Sires Dec. at ¶ 4.)

### 5.  Third-party production

Capital One launched thirty-seven third-party subpoenas, including 10 at Bank United-related entities and many at BankUnited customers.  It did so without any effort to avoid the need for such voluminous discovery beforehand.  Even though Capital One later agreed to hold certain customer subpoenas in abeyance, we believe most of BankUnited customers already had responded with their document production.  (Sires Dec. at ¶ 12.)  Capital One further argues that Defendants have "inserted themselves" (Motion at 19) into discovery from third parties. Defendants—and BankUnited's – "involvement" is unsurprising given that the subpoenas in questions are almost all directed at either BankUnited entities, customers of BankUnited, or transaction partners of BankUnited.[8]

---

[8]  Several issues raised by Capital One also are unfounded.  First, Defendants have not directed Herald National not to produce documents.  On the contrary, counsel for Capital One has dealt directly with counsel for Herald National with respect to production, including by agreeing on search terms, all without the intervention of Defendants or BankUnited.  Second, Capital One's reference to Defendants' request for extensions on behalf of third parties, apparently referring to the subpoena served on Mogull Realty, the realtor that has worked to locate space for future BankUnited locations, was a courtesy to Kim Mogull, the principal of Mogull Realty, who had travel plans over the holidays.  The Mogull subpoena does serve to demonstrate the unnecessary discovery Capital One is pursuing.  Aside from the fact that

**6. Confidentiality Designations**

Lastly, Capital One makes much ado about BankUnited's over-designation of documents as "highly confidential."   Upon discovering the over-designations, BankUnited quickly acted to correct the problem.  That process included having attorneys work over the holidays to re-code documents.   (Marks Dec. at 24.)  Defendants also informed Capital One that if there were any documents in an existing production that it believes were wrongfully designated, BankUnited would address any re-designation of that document on a priority basis.

<u>Conclusion</u>

Defendants are prepared to complete discovery on the existing schedule, but do not oppose a brief extension of the discovery schedule.

Dated: January 4, 2012                              Respectfully submitted,


   /s/ James H. Rodio   
James H. Rodio, PLC
Virginia Bar No. 20139
2121 Eisenhower Ave. Suite 300
Alexandria, Virginia 22314
Phone: 703 549-2288
Fax:    703 562-7011
Email: jimrodio@rodiolaw.com

---

BankUnited's preparation to open branches after the expiration of the non-compete is simply not prohibited by Defendants' non-compete, Defendants made clear they would stipulate as to the fact that BankUnited has scouted for and secured space from which to operate branches after the expiration of the non-competes.

David Boies
*Pro hac vice* motion to be filed
BOIES SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York 10504
Telephone: 914.749.8200
Fax: 914.749.8300
Email: dboies@bsfllp.com

Stuart H. Singer
*Pro hac vice*
Carlos M. Sires
*Pro hac vice*
BOIES SCHILLER & FLEXNER LLP
401 E. Las. Olas Blvd., Suite 1200
Ft. Lauderdale, FL 33301
Telephone: 954.356.0011
Fax.: 954.356.0022
Email: ssinger@bsfllp.com
        csires@bsfllp.com

Matthew W. Friedrich
*Pro hac vice*
David Ellis
Virginia Bar No.: 74860
BOIES SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. N.W.
Washington D.C. 20015
Telephone: 202.274.1113
Fax: 202.237.6131
Email: mfriedrich@bsfllp.com


*Attorneys for Defendants, John A. Kanas*
*and John Bohlsen*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 4th  day of January, 2012 I electronically filed the foregoing Answer to the Amended Complaint with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jason Craig Schwartz

Gibson Dunn & Crutcher LLP

1050 Connecticut Ave NW

Washington, DC  20036-5306

jschwartz@gibsondunn.com

/s/ James H. Rodio_____
James H. Rodio
James H. Rodio, PLC
Attorney for John A Kanas and
John Bohlsen
Virginia Bar No. 20139
2121 Eisenhower Ave. Suite 300
Alexandria, Virginia 22314
Phone:      703 549-2288
Facsimile:  703 562-7011
Email: jimrodio@rodiolaw.com