IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Capital One Financial Corporation,<br><br>                Plaintiff,<br><br>     v.<br><br>John A. Kanas and John Bohlsen,<br><br>                Defendants. | Civil Action No. 1:11-cv-750 (LO/TRJ) |

**REPLY IN SUPPORT OF CAPITAL ONE FINANCIAL CORPORATION'S MOTION FOR EXTENSION OF TIME TO COMPLETE DISCOVERY**

Capital One Financial Corporation ("Capital One") respectfully submits this reply in support of its motion to extend the discovery deadline by six weeks to March 23, 2012.

**INTRODUCTION**

Defendants' Response confirms that a modification of the existing discovery deadline is appropriate. Indeed, Defendants themselves admit that they "do not oppose a brief enlargement of the discovery period as requested by Capital One to allow . . . depositions to be taken in a[n] orderly fashion." Dkt. Entry 24 ("Resp.") at 8; *see also id.* at 1.

Despite their agreement that Capital One's motion should be granted, Defendants open their brief with a reference to the Court's admonition that the parties should not expect any extension to the discovery schedule. *See* Resp. at 1. The irony, however, is that while Capital One took this guidance to heart and engaged in herculean efforts to ensure that it would substantially complete its document production by the end of 2011 in order to allow sufficient time for a reasonable (but expedited) deposition schedule and follow-up discovery, it was Defendants and their captive bank who commenced a pattern of delay that, absent a modest

extension, will have the effect of running out the clock on Capital One's attempts to obtain the discovery to which it is entitled—and thereby cause irreparable harm to Capital One's case.

Defendants could not credibly argue otherwise or oppose Capital One's motion: after months of delay and legal maneuvering, they now acknowledge that they will not substantially complete their document production until, *at the earliest*, mid-January. Defendants, therefore, admit that the evidentiary playing field is now decidedly uneven: Plaintiff has substantially completed its document production but Defendants have not provided all the relevant internal emails, memoranda, and other documents of the bank that they control, the vehicle they have used to violate the very contracts at issue.

This delay, however, is merely the tip of the iceberg. Indeed, Defendants' only response to the other numerous discovery shortcomings that Plaintiff has raised is to repeat prior promises that they have been making for weeks that they are working to remedy these problems at some indeterminate point in the future. As set forth in greater detail below, Defendants admit: (*i*) that their mid-January document production completion estimate does not account for their need to review additional important documents that they have previously refused to search; (*ii*) that they have been sitting on Plaintiff's proposed fact stipulations for over a month with no response; (*iii*) that their other business partners and agents are "in the process of" providing requested discovery at an indeterminate future date, but we have absolutely no assurance that those critical third parties will produce their documents by mid-January; and (*iv*) that they will "shortly" provide supplemental interrogatory responses that they had refused to answer based on the need for a protective order that has been in place since December 6. As a result, Capital One has no assurances that Defendants' current promise to complete discovery by mid-January is even meaningful.

Proceeding to depositions on this lopsided record would substantially prejudice Capital One; absent the requested extension, Capital One would be forced to take and defend fifteen (15) or more depositions in New York, Florida, California, Washington, D.C., Illinois, and Massachusetts over the course of two weeks.  This is why the parties agreed to substantially *complete* document production by the end of 2011—to provide adequate time to review the documents and proceed to depositions.  But now, the deposition process cannot begin until, at the very earliest, late January—leaving insufficient time to conduct the fifteen (15) or more depositions in a reasonable fashion.  And given the numerous third parties who have not yet produced their critically important documents, it is evident that those documents will not be produced by mid-January in any event.  This scenario is precisely the discovery ambush that the Federal Rules are designed to prevent.  Thus, Defendants' admissions about the current discovery record amount to a concession that Capital One cannot complete discovery on the existing schedule without suffering extreme and unfair prejudice.

**ARGUMENT**

1. Because Defendants' pattern of delay is apparent from even a cursory review of the parties' correspondence (*see* exhibits to Dkt. Entry 22), Defendants attempt to excuse their (and BankUnited's) dilatory conduct by minimizing the effect of the "two week difference" between the date on which Defendants promised to produce (December 30, 2011) and the date on which they now *claim* they will produce (January 13, 2012).  This characterization of the timing of Defendants' production is highly misleading.  First, Defendants have promised to produce documents before, and have failed to do so.  There is no guarantee that their present assurances will hold up.  Second, Defendants' current promise, as explained below, is based on the assumption that they will not search for highly relevant documents relating to their activities in

3

the tri-state region covered by the non-compete agreements. Finally, even if Defendants substantially complete their production by January 13, it will be far too late. Plaintiff will need time to review and digest the new documents. And after that, there will be insufficient time to conduct the approximately fifteen (15) or more depositions of the witnesses whom the parties have identified.

While a two-week delay may not be meaningful in the context of a longer discovery period, this delay takes on vital importance in this case given the scant time remaining for the parties to conduct depositions. Under the Court's current schedule, only twenty-five (25) business days from today remain for the parties to conduct the depositions (in Washington, D.C., New York, Florida, California, Illinois, and Massachusetts). Defendants' two-week delay eliminates 40% of the time the parties have remaining to conduct depositions and comprises more than 10% of the entire discovery period. Of course, this assumes that Defendants and BankUnited substantially complete discovery in mid-January. If past is prologue, Defendants will not meet their new deadline, leaving even less time for depositions. In these circumstances, Defendants' delay serves to unfairly deprive Capital One of critical time to prosecute its claims in discovery.

2. Again, it is important to emphasize that, even now, Defendants offer little more than vague promises that they will produce to Capital One the discovery it seeks in the time remaining. Far from providing sufficient assurances that the requested documents will be forthcoming, Defendants' promises amount to little more than the proverbial assurance that "the check is in the mail." To date, Defendants' track record of broken promises inspires little confidence that their promised mid-January date is reliable:

- Defendants now assert that BankUnited's document production will be substantially complete, at the earliest, January 13, 2012. Resp. at 2. This new

4

promise comes after weeks of Defendants' assurances that document production would be complete by December 30, 2011, so that depositions could begin ten days later. *See* Moving Brief at 13–14.

- Defendants appear to excuse their failure to produce documents in a timely fashion, at least in part, on their purported willingness to "enter into appropriate fact stipulations." Resp. at 3. This is cynical, at best. Since December 5—one month ago—Plaintiff has requested Defendants' response to Capital One's proposed stipulation of facts over and over again. *See, e.g.,* Diamant Decl. Exs. R at 4, Y at 3, CC at 2. During this time, while Defendants failed to pursue their document production with sufficient diligence, Defendants also failed to respond to Capital One's proposed stipulations. Even at this late date, Defendants have only weakly provided an "indication that they would respond during the week of January 3, 2012." Resp. at 8. Defendants cannot excuse their document production failures on stipulated facts they have failed to advance meaningfully.

- Defendants futilely attempt to excuse BankUnited's overuse of confidentiality designations by arguing that it "quickly acted to correct the problem." Resp. at 10 (citing "Marks Dec. at 24"). In fact, BankUnited has *not* remedied its inexcusable abuse of this Court's Protective Order, and Capital One continues to be prejudiced in prosecuting this action, as the over-designation hinders Capital One's ability to prepare for depositions and to coordinate with its outside counsel. BankUnited has agreed to de-designate a mere three (3) documents, leaving dozens of non-confidential documents subject to improper confidentiality designations. *See* Diamant Decl. Ex. CC, at 2–3. Tellingly, Defendants offer no excuse for this conduct, nor do they make any promises as to when it will be corrected. In fact, the declaration submitted by BankUnited's outside counsel Aaron Marks only asserts that BankUnited has "agreed to re-review its first two productions" and remedy its misconduct at some uncertain point in the future. Marks Decl. ¶ 27. These incontrovertible and unexplained discovery abuses belie Defendants' hollow expressions of indignation regarding Capital One's motion.

- Defendants have also offered no excuse for failing to update their deficient interrogatory responses. Defendants initially refused to respond to several of Capital One's key interrogatories in the absence of an "Agreed Protective Order." Even though the protective order has been on file for a month, Dkt. Entry 20, Defendants have not updated their responses, stating only that they were in the process of "updating Defendants' interrogatory responses and will provide them shortly." Diamant Decl. Ex. V.

- Defendants also contend that they have facilitated third-party discovery; in fact, the opposite is true. They assert that "most of these [third] parties have completed production or are in the process of doing so." Resp. at 3. This statement obscures two critical facts. *First*, Defendants have hindered critical third-party productions. *See* Moving Brief at 20. *Second*, Defendants' use of the conjunctive "or" is telling. As of this date, of the thirty-seven (37) subpoenas issued by

5

Capital One, ten (10) remain outstanding with no specific assurance that documents are forthcoming soon. *Id.* at 7.

3. According to Defendants, the "principal reason" that they did not meet the previously agreed-upon and all-important December 30 document production deadline is that Capital One's search terms are designed to return documents reflecting the scope of BankUnited's business activities in New York, New Jersey, and Connecticut. *See* Resp. at 2. Of course they are. The gravamen of this action is that Defendants—on their own and through their bank—are unlawfully competing in New York, New Jersey, and Connecticut despite their protestations that their company, BankUnited, is merely a Florida bank. As such, these search terms go to the central issue in this litigation: Defendants' business activities in the three states covered by the non-compete at issue—New York, New Jersey, and Connecticut. Defendants proclaim that these search terms are "broad and unreasonable," *id.* at 3, but they do not dispute that their search for the records of these activities did not begin in earnest until mere weeks ago. *See* Diamant Decl. Ex. CC at 1-2.

Tellingly, Defendants misleadingly assert that "Capital One refused to narrow [its requested] search terms" until January 3, 2012. Resp. at 5. This assertion is simply—and demonstrably—incorrect. From the parties' very earliest discussions, Capital One agreed to work with BankUnited to attempt to reach agreement on all of the search terms. *See, e.g.,* Diamant Decl. Ex. Y at 2-3 (describing Capital One's December 2 proposal to limit these searches and subsequent negotiations with respect to the same searches). In fact, the Capital One proposal to limit the New York, New Jersey, and Connecticut search terms that BankUnited ultimately rejected was based on a very similar proposal BankUnited made to Capital One. *Compare* Diamant Decl. Ex. D, at Schedule B; *and* Marks Decl. Ex. B, Schedule B; *with* Marks Decl. ¶ 15. Instead of working with Capital One to resolve this dispute, BankUnited unilaterally

and arbitrarily insisted on conducting only its own more limited search and represented that the additional documents returned by the application of Capital One's broader search terms were mere "chaff." This representation, however, proved to be untrue. When Capital One reviewed a sample of supposed "chaff" late last week and early this week, it discovered numerous highly relevant documents responsive to Capital One's requests. In his declaration, Aaron Marks, counsel for BankUnited, admitted that the sample included some documents relevant to Capital One's claims, albeit only a "few." Marks Decl. ¶ 19. ("[W]e believe the Sample Production contains few documents that are relevant to Capital One's claims."). This is a significant understatement. Several of the documents are highly relevant to the key issues in this case, but Capital One is prevented from describing them in detail because Defendants have preliminarily designated them as "Outside Attorneys' Eyes Only" under this Court's protective order.[1] Immediately upon discovering that BankUnited's sample of "chaff" actually contained highly relevant documents, Capital One wrote to Defendants and BankUnited offering yet another compromise to obtain the relevant documents relating to competitive activity in the prohibited region. Defendants note in their Response that "[t]hese proposed limitations are being considered by Defendants and BankUnited immediately." Resp. at 5. Capital One awaits a response to its latest attempt to reach a reasonable compromise.[2]

    4. Defendants also attempt to gloss over the significant outstanding discovery that remains to be produced by pointing out that they (with BankUnited) have "produced over

---

[1] Capital One will be prepared to discuss these documents in greater detail during the hearing on this motion.

[2] Because the parties were still negotiating the search terms in light of the sample documents, Capital One did not believe that the issue was appropriately "teed up for resolution by the Magistrate Judge" at the time Defendants first suggested that approach. *See* Resp. at 5. Capital One respectfully reserves the right to bring the issue to the Court for resolution if the parties fail to reach agreement on this issue.

188,000 pages to Capital One." Resp. at 2.  But even so, Defendants acknowledge that they will not substantially complete their production—both the documents they acknowledge are in their own control as well as the documents they claim are controlled by BankUnited—until mid-January at the earliest.

This failure is inexcusable when contrasted with Capital One's efforts and output. Capital One had significantly more documents to review and was able to complete its production by the agreed-upon deadline in order to comply with the Court's scheduling order.  Defendants' dilatory document production efforts are dwarfed by the effort that Capital One has undertaken to comply with the Court's deadlines.  For instance, although Defendants point out that they have used a team of "over 20 attorneys" who have "reviewed over 120,000 documents" (Resp. at 2), Capital One, in contrast, engaged a team of more than ninety (90) contract attorneys, who have reviewed nearly one million documents (estimated to exceed six million pages), leading to the production of 350,000 pages.  Diamant Decl. ¶ 11.  There is simply no telling how much further along the parties would be in discovery had Defendants approached discovery with a similar resolve and seriousness of purpose.

Rather than acknowledge that their belated review efforts were not adequate to the task at hand, Defendants instead attempt to shift the blame to Capital One for reviewing *too many* documents in the face of Defendants' even more burdensome search terms.  There is no dispute, however, that Defendants' searches required Capital One to review many more documents than BankUnited must review.  *See* Diamant Decl. Ex. X, at 4.  The fact that Defendants eventually "voluntarily narrowed or withdrew certain of their document requests" "so as to expedite discovery and avoid requiring Capital One [to] review an excessive number of documents" (Resp. at 3), is immaterial.  By the time that Defendants belatedly offered this "voluntar[y]

8

narrow[ing,]" Capital One had already engaged approximately ninety (90) contract attorneys and made substantial progress. Diamant Decl. ¶ 9 & Ex. I (noting that by December 2, 2011, Capital One had already reviewed "more than 600,000 documents"). Moreover, although Defendants did agree to "suspend" certain of their search terms pending the non-existent negotiations on stipulations of fact, *see* Sires Decl. ¶ 4, at no point did Defendants agree to withdraw any of their document requests. Defendants apparently object to Capital One's early and far-reaching efforts to identify documents responsive to their document requests and believe this justifies BankUnited's refusal to act with similar diligence.

5. Now that Capital One is so far behind in receiving the discovery to which it is entitled, Defendants assert that they could "find a way, albeit perhaps not a comfortable one, to complete deposition discovery if the requested enlargement of time is denied." Resp. at 8. Of course, Defendants would be more than happy to proceed to the deposition phase of this case having full use of Capital One's internal documents before Capital One could obtain all of Defendants' and BankUnited's internal documents. Capital One, however, cannot conduct meaningful depositions (or properly defend its witnesses during depositions) without Defendants' discovery, as well as documents being produced by third parties.

Without the requested extension, Capital One will be in an untenable position— commence fifteen or more depositions around the country with one month remaining in the discovery period and no assurance that BankUnited and Defendants will complete production of their documents by even the late date they are now promising. Even worse, Capital One has no assurance at all that the numerous third parties will produce in time.

"Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is

squandered." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). Defendants and BankUnited have acted in concert to play exactly the kinds of games that the discovery rules are supposed to prevent. Capital One acted responsibly and diligently to produce its documents and be ready for depositions. Defendants did not. To hold Capital One to the Court's original discovery deadline under these circumstances would only reward Defendants' dilatory tactics and discovery delays and unfairly prejudice Capital One, which has acted expeditiously to comply with the Court's schedule.[3]

## CONCLUSION

For the reasons set forth above, as well as those set forth in Capital One's Memorandum in Support of Motion to Extend Discovery, Capital One respectfully requests that this Court grant it a modest, reasonable, and proportionate extension of discovery for six weeks, until March 23, 2012, and requests that the Court continue the final pretrial conference accordingly. Defendants do not oppose this result.

---

[3] Defendants also contend that Capital One CEO Richard Fairbank should be deposed in this case. Capital One believes that any deposition of Mr. Fairbank would be an improper apex deposition for the purposes of harassment. As noted by Defendants, the parties have agreed to hold Mr. Fairbank's deposition in abeyance until the other depositions are complete. Indeed Capital One has agreed to make three of its most senior executives available for deposition, including John Finneran, Capital One's general counsel and corporate secretary, as well as Lynn Carter, former President, Banking Segment of Capital One. Capital One is confident that the record and the testimony of these other witnesses will confirm that Mr. Fairbank's testimony would be merely duplicative of testimony available from other witnesses. Accordingly, should Defendants insist on Mr. Fairbank's deposition at that time, Capital One respectfully reserves the right to seek a protective order from the Court.

Respectfully submitted,

Dated: January 5, 2012

/s/ Jason C. Schwartz
Orin Snyder, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
osnyder@gibsondunn.com
Telephone:	212.351.4000
Facsimile:	212.351.4035

Jason C. Schwartz, Va. Bar No. 43635
Howard S. Hogan, *pro hac vice*
Michael Diamant, Va. Bar No. 65404
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
hhogan@gibsondunn.com
mdiamant@gibsondunn.com
Telephone:	202.955.8500
Facsimile:	202.467.0539

James A. Murphy, Va. Bar No. 35380
MURPHY & McGONIGLE
4870 Sadler Road, Suite 301
Glen Allen, VA  23060
jmurphy@mmlawus.com
Telephone:	804.762.5330
Facsimile:	804.762.5360

*Attorneys for Plaintiff Capital One Financial Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th of January, 2012, I will electronically file the foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

James H. Rodio
James H. Rodio PLC
2121 Eisenhower Avenue
Suite 300
Alexandria, VA  22314
jimrodio@rodiolaw.com

/s/ Jason C. Schwartz
Jason C. Schwartz, Va. Bar No. 43635
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
Telephone:	202.955.8500
Facsimile:	202.467.0539