# EXHIBIT #5

# (Redacted Exhibit)

# Singer Declaration

Page 1

```
 1

 2      IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
 3              ALEXANDRIA DIVISION

 4                   -      -      -
    CAPITAL ONE FINANCIAL CORPORATION,
 5
                    Plaintiff,         -
 6
              vs.                      -
 7
                                       -
 8  JOHN A. KANAS and JOHN BOHLSEN,
                                       -
 9
                    Defendants.
10                   -      -      -

11          *** HIGHLY CONFIDENTIAL ***

12           Wednesday, February 22, 2012

13                   -      -      -

14            Videotaped Deposition of

15  JAMES COVINGTON, taken pursuant to Notice,

16  was held at the law offices of Gibson Dunn &

17  Crutcher, LLP, 200 Park Avenue, New York,

18  New York 10166, commencing at 9:51 a.m., on

19  the above date, before Toni Allegrucci, a

20  Notary Public of the State of New York.

21                   -      -      -

22             MAGNA LEGAL SERVICES

23               Seven Penn Center
              1635 Market Street  8th Floor
24            Philadelphia, Pennsylvania 19103
                 (866) 624-6221
25
```

Page 238

[lines 1-5 redacted]
6  MR. SIRES: Okay. Let me look
7  through my outline, but I may be done,
8  so if we can just take a minute.
9  MR. SCHWARTZ: Sure.
10  MR. SIRES: And we can all sit here
11  if you like because I don't think it's
12  worth getting up.
13  MS. PFENNING: Also, off the
14  record.
15  (Off-the-record discussion held.)
[lines 16-25 redacted]

Page 239

[lines 1-10 redacted]
11  MR. SIRES: Mr. Covington, thank
12  you very much for your patience and
13  agreeing to answer these questions.
14  THE WITNESS: Yes, sir.
15  MR. SIRES: We're done.
16  MR. SCHWARTZ: I have no questions.
17  Thank you, Mr. Covington.
18  MR. SIRES: And you folks have been
19  not waiving.
20  MR. SCHWARTZ: We'll read and sign,
21  yep. Yeah, we'll read and sign. And
22  just, for the record, the agreement we
23  reached off the record was that
24  Mr. Sires will treat the transcript as
25  highly confidential pursuant to the

Page 240

1  HIGHLY CONFIDENTIAL - J. Covington
2  protective order, subject to our
3  agreement to promptly designate those
4  portions that do not merit such
5  treatment.
6  MR. SIRES: Thank you.
7  MR. SCHWARTZ: Thank you.
8  THE VIDEOGRAPHER: The time is
9  4:21. This ends tape No. 4.
10  -o0o-
11
12  (Whereupon, the deposition of
13  JAMES COVINGTON was concluded at
14  4:21 p.m.)
15
16  _____
17  JAMES COVINGTON
18
19  Subscribed and sworn to before me
20  this ___ day of _____, 2012.
21
22  _____
23
24
25

Page 241

1
2  C E R T I F I C A T E
3
4  STATE OF NEW YORK   )
5        : ss.
6  COUNTY OF NEW YORK   )
7
8  I, Toni Allegrucci, a Notary Public
9  within and for the State of New York, do
10  hereby certify:
11  That JAMES COVINGTON, the witness
12  whose deposition is hereinbefore set
13  forth, was duly sworn by me and that
14  such deposition is a true record of the
15  testimony given by the witness.
16  I further certify that I am not
17  related to any of the parties to this
18  action by blood or marriage, and that I
19  am in no way interested in the outcome
20  of this matter.
21  IN WITNESS WHEREOF, I have hereunto
22  set my hand this 28th day of February,
23  2012.
24  _____
25  TONI ALLEGRUCCI

Page 54

HIGHLY CONFIDENTIAL - J. Covington

1  THE VIDEOGRAPHER:  The time is
2  11:04 a.m. and we're back on the record.
3  Q.  Now, Mr. Covington, let me go back
4  and talk about another hypothetical, slight
5  variation on the one right before we took a
6  break.  You have under this hypothetical a
7  person who lives in New York, calls down to a
8  branch of this Florida based bank which is
9  located, the branch is in Florida, and says I
10  want to open an account at your branch, and
11  an account is opened at that branch and he
12  sends money and deposits it, whether
13  electronically or by mail, in that account.
14  Would you characterize that as that bank
15  engaging in banking activity in New York?
16  A.  Where the client lives in New York?
17  Q.  And decides he wants to open an
18  account at a BankUnited -- let me rephrase
19  that.  I'm not doing good keeping the name
20  off of it.
21  A.  I understand the point you are
22  making.  I would characterize it as doing
23  banking in New York, yes, because they are
24  doing, they are doing business with someone

Page 55

HIGHLY CONFIDENTIAL - J. Covington

1  that lives in the State of New York.
2  Q.  Okay.  So your view, then, if I can
3  sort of sum it up, is in determining whether
4  banking activity under these hypotheticals
5  takes place in New York State would be if
6  either -- well, strike that.
7  Let me sort of see if I can boil
8  down your reasoning for concluding that in
9  these hypotheticals there was banking
10  activity located outside of Florida by this
11  Florida based bank.
12  In your view, if the Florida based
13  bank even through a Florida branch acquires a
14  mortgage on property located --
15  THE VIDEOGRAPHER:  I'm sorry, I'm
16  sorry.  I'm getting interference.  If
17  there's a BlackBerry on the table.
18  (Off-the-record discussion held.)
19  Q.  Let me start again.
20  A.  Okay.
21  Q.  I'm trying to get sort of into a
22  one statement, what I believe to be your
23  reasoning for characterizing a transaction as
24  occurring outside of Florida, and so I'm

Page 56

HIGHLY CONFIDENTIAL - J. Covington

1  going to now state what I believe your
2  reasoning is based on your answers, and I'm
3  going to ask you whether I am right or not in
4  the way I've stated it, okay.  So I'm not
5  trying to put words in your mouth, I'm asking
6  whether I've understood it correctly.
7  With that preface out of the way,
8  would it be fair to say, Mr. Covington, that
9  in your view, if a Florida based bank is part
10  of a mortgage loan transaction carried out
11  from one of its branches in Florida, acquires
12  a mortgage on a property located in a state
13  outside of Florida, that the bank in doing so
14  has engaged in banking activity in that state
15  where the property is located?
16  MR. SCHWARTZ:  Objection, asked and
17  answered.
18  A.  Yes.
19  Q.  Okay.  And is it, I
20  understand -- strike that.
21  Is it fair to characterize your
22  view that, if a bank in Florida through a
23  branch in Florida opens a depository account
24  for a resident of a state other than Florida,

Page 57

HIGHLY CONFIDENTIAL - J. Covington

1  it has engaged in banking activity in the
2  state where that account holder resides?
3  A.  Yes.
4  MR. SCHWARTZ:  Same objection.
5  Q.  And would it be fair to say that
6  those two propositions are your underpinning
7  for what -- your conclusion as to what
8  constitutes banking outside of Florida?
9  MR. SCHWARTZ:  Objection.  You've
10  asked him two hypotheticals, not a
11  generic question.
12  A.  Those would be two examples, but I
13  don't know that they would characterize what
14  I consider banking outside of Florida.
15  Q.  Other than two, those two examples
16  which I can sum up as either acquiring a
17  mortgage on Florida -- strike that -- which I
18  can sum up as either acquiring a mortgage on
19  property outside of Florida or opening an
20  account for someone who lives outside of
21  Florida, what other things that a bank in
22  Florida does would you characterize as
23  banking outside of Florida?
24  MR. SCHWARTZ:  Let me just object

Magna Legal Services

Page 58

HIGHLY CONFIDENTIAL - J. Covington

to the preface. I think you've misstated your question about the person outside of Florida. They transferred funds from outside the state I think in your original hypothetical.

    MR. SIRES: Okay. Jason, I'm just going to ask you to object and not make speaking objections, object to form.

    Q. Okay, Mr. Covington.

    MR. SIRES: Can you read the question back to him again, please.

    (Record read.)

    MR. SCHWARTZ: Same objections.

    A. I would consider developing a strategy to acquire banking relationships in a particular market to be a banking activity. I would say developing a brand recognition outside of Florida in a particular market with the intent of acquiring banking relationships to be part of banking. I would say identifying and building a distribution system would be characteristic of a banking activity.

    And I would say hiring, recruiting

Page 59

HIGHLY CONFIDENTIAL - J. Covington

people to work in a market outside of Florida or to do business with people in that market would be a banking activity.

    Q. Let me ask you about the first one you said was developing a strategy.

    A. Yes, sir.

    Q. What does developing a strategy mean?

    A. I would say a strategy would include the components of place which is where you would do your business, how you would distribute your product, people who would deal with clients, who would manage clients, who would develop marketing approaches to developing brand and acquiring clients, positioning which would be both strategy and the brand development, pricing, how do you price to acquire business, and products, what products do you offer to acquire business.

    And I'm sure there are other things like regulatory and legal stuff that have to be included in a strategy, and I have to admit I don't understand all that.

Page 60

HIGHLY CONFIDENTIAL - J. Covington

    Q. Let me ask you something. If, if a person sits in his study in his home in New York State, and sits back on his EasyChair or her EasyChair, closes his or her eyes and starts thinking about where he or she might want to open branches in Manhattan, would you call that exercise engaging in banking activity?

    MR. SCHWARTZ: And again, you are asking for his personal opinion.

    A. I don't know what the, I don't know what the legal definition of it would be. I can tell you that I do that and it clearly is part of my banking activity. I mean, I don't necessarily close my eyes, but I do exactly, I do very similar to what you are talking about and I would consider it, I mean, it is part of my, it's what I consider part of my responsibilities to think through different scenarios like you are presenting me with.

    Q. So if I sat in Mr. Schwartz's waiting room this morning thinking about possibly trying to open some bank branches in Manhattan, you would say that this morning in

Page 61

HIGHLY CONFIDENTIAL - J. Covington

Mr. Schwartz's waiting room I was engaged in banking activity in New York?

    A. I would say you were, you were involved in an activity related to banking in New York.

    Q. No. But my question is, and my questions before that have been, whether you characterize that exercise as engaging in banking activity?

    A. I'd probably say that's a stretch.

    Q. Why?

    A. Because I really don't know what you are thinking about. I mean, just, I don't know.

    Q. I'm telling you what I'm thinking about.

    A. About branching?

    Q. Yeah. I'm thinking about what --

    A. If you are developing a strategy to acquire clients then, banking clients in the marketing place, then that is a banking activity.

    Q. So to answer my question, if I as I waited for your deposition to start sat in

Page 62

1  HIGHLY CONFIDENTIAL - J. Covington
2  Mr. Schwartz's waiting room here in New York
3  City and started thinking about where I might
4  want to one day open branches for a bank in
5  New York City, you would say that I was
6  involved in banking activity in New York when
7  I was doing that, correct?
8      A.  Yeah.  It would be a banking
9  activity, sure.  Developing a distribution
10 system is a banking activity.
11     Q.  And even just thinking about it, as
12 I in my hypothetical?
13     A.  You've got to think about it before
14 you -- hopefully you will think about it
15 before you do it.
16     Q.  So the answer to my question is
17 "yes" --
18     A.  Yes.
19     Q.  -- that would be my engaging in
20 banking activity in the lobby of Gibson Dunn
21 & Crutcher?
22     A.  Yes.
23     Q.  I'm trying to find one document
24 here, if you'll bear with me for a second.
25         MR. SCHWARTZ:  Sure.

Page 63

1  HIGHLY CONFIDENTIAL - J. Covington
2          (Off-the-record discussion held.)
3      Q.  Okay.  Now, Mr. Covington, have you
4  ever had occasion to, to participate on
5  behalf of any of the banks for which you have
6  worked in the secondary mortgage loan market?
7      A.  No, sir.
8      Q.  Do you know what the secondary
9  mortgage loan market is?
10     A.  Generally.
11     Q.  What is your general understanding
12 of that?
13     A.  It is the act of buying mortgages
14 originated by one financial institution to
15 put in your portfolio.
16     Q.  Do you know whether typically in
17 the context of these transactions on the
18 secondary mortgage loan market there is any
19 contact as part of the acquisition with the
20 customer who originally took out the loan or
21 signed the mortgage?
22     A.  That's a pretty broad question.
23     Q.  If you know.  If you don't know
24 then just let me know.  Let me, let me
25 withdraw the question and rephrase it.

Page 64

1  HIGHLY CONFIDENTIAL - J. Covington
2      Q.  Do you know how these transactions
3  actually are carried out?
4      A.  I have a general idea.
5      Q.  And what is the general idea?
6      A.  That they are packaged together and
7  sold as a package to another financial
8  institution, an investment organization, a
9  variety of different.  But to a bank it would
10 be a package sold as a package.
11     Q.  And do you know if that is a market
12 that sort of cuts across state lines?
13     A.  I honestly don't know how you, if
14 you want to purchase, I don't know how
15 you -- what the restrictions are.  I'm
16 assuming you could buy packages from
17 particular locations, but I don't, I don't
18 know that for a fact.
19     Q.  Okay.  Now, you've spent, as I take
20 it, your professional career as an employee
21 of a bank in either Florida or New York?
22     A.  Or Alabama.
23     Q.  Or Alabama, I'm sorry.  So putting
24 Alabama aside for the second, for a second,
25 you've spent certainly the bulk of your

Page 65

1  HIGHLY CONFIDENTIAL - J. Covington
2  career in as an employee of a bank in
3  New York and in Florida; is that right?
4      A.  Yes, sir.
5      Q.  Now, as a banker, is there any
6  connection between those two banking markets?
7      A.  Yes, sir.
8      Q.  And what is that connection?
9      A.  From my experience the primary
10 connection has been snow birds, retirees or
11 semi-retired people going from New York to
12 Florida for the winter, for the weather.
13     Q.  Given that understanding of the
14 connection between the two states, would you
15 expect that banks in Florida typically have
16 at least some mortgage loans where the
17 property is located in New York?
18         MR. SCHWARTZ:  Objection, calls for
19     speculation.  You can answer if you
20     know.
21     A.  When, when I was in Florida in
22 banking I don't believe it would have been
23 common.  Today I believe it would be quite
24 common.
25     Q.  And, of course, you were in the

17 (Pages 62 to 65)

Magna Legal Services