# EXHIBIT #6

## (Redacted Exhibit)

## Singer Declaration

1

2      IN THE UNITED STATES DISTRICT COURT
    FOR THE EASTERN DISTRICT OF VIRGINIA
3              ALEXANDRIA DIVISION

4                    -    -    -
   CAPITAL ONE FINANCIAL CORPORATION,
5
                    Plaintiff,        -
6
               vs.                    -
7
                                      -
8  JOHN A. KANAS and JOHN BOHLSEN,
                                      -
9
                    Defendants.
10                   -    -    -

11          *** HIGHLY CONFIDENTIAL ***

12          Friday, February 17, 2012

13                   -    -    -

14          Rule 30(b)(6) Videotaped Deposition

15 of Konrad Schwarz, taken pursuant to Notice,

16 was held at the law offices of Gibson Dunn &

17 Crutcher, LLP, 200 Park Avenue, New York,

18 New York 10166, commencing at 10:42 a.m., on

19 the above date, before Toni Allegrucci, a

20 Notary Public of the State of New York.

21                   -    -    -

22          MAGNA LEGAL SERVICES

23            Seven Penn Center
           1635 Market Street  8th Floor
24         Philadelphia, Pennsylvania 19103
              (866) 624-6221
25

Page 326

1    HIGHLY CONFIDENTIAL - K. Schwarz
2      Q.  But you have an idea that looking
3  for office space is engaging in banking, you
4  have a view that leasing office space is
5  engaging in banking, you have a view that
6  building out office space, including
7  painting, is engaging in banking, okay.  We
8  have covered all of that.
9      A.  Paining a branch.
10     Q.  Painting a branch?
11     A.  Right.
12     Q.  Not painting your house, painting a
13 branch.
14     A.  Right.
15     Q.  So I want to explore where you draw
16 the line on what is permissible and what is
17 not in terms of what you believe banking is
18 and what's not banking.
19     A.  Okay.
20     Q.  So if Mr. Kanas were to sit in his
21 home in New York and think about what
22 business plans he would have upon the
23 expiration of his non-compete, would you say
24 that's engaging in banking?
25         MR. SCHWARTZ:  Objection, calls for

Page 327

1    HIGHLY CONFIDENTIAL - K. Schwarz
2  a legal conclusion.
3      A.  My point of view, again not a legal
4  point of view but in terms of how we
5  prosecute the business, is that any activity
6  that he engages in that is similar to ours,
7  that has eyes towards the tri-state area, in
8  fact, is competing in the banking business.
9          For example, I'm a strategist, I
10 develop strategies all the time.  I sit
11 around and I think about the future things
12 that we're going to do.  So, if John is
13 sitting and thinking in a detailed way as to
14 his plan to acquire branches in certain areas
15 and developing those strategies actively,
16 again, I'm not an attorney but, to me, that's
17 a technical violation of the non-compete.
18     Q.  You said in that answer that he's
19 developing those strategies actively and I'm
20 not sure what that means, so let me go back
21 to my question.
22     A.  I'm just referring back to your
23 hypothetical, which is, he's sitting in his
24 office, he's actually thinking about which
25 branch locations he wants to be in, he's

Page 328

1    HIGHLY CONFIDENTIAL - K. Schwarz
2  developing plans for his entry into the
3  market; that plan development is banking and
4  you can't have the result without the plan.
5      Q.  Even if he's doing it in his study
6  of his home by himself with it all in his
7  head.
8          MR. SCHWARTZ:  Objection,
9  incomplete hypothetical, calls for a
10 legal conclusion.
11     A.  I'm at not an attorney as to
12 whether or not to say that that --
13     Q.  I'm not asking you to be an
14 attorney.
15     A.  -- whether or not that is something
16 we would do.
17     Q.  No.
18     A.  That's something we do, and...
19     Q.  See, I'm trying to get your
20 understanding as a lay person.
21     A.  Right.
22     Q.  You are, in fact, an attorney, by
23 the way.  Okay.  You went to law school, you
24 went to a good law school, so you are an
25 attorney, so I understand you are not a,

Page 329

1    HIGHLY CONFIDENTIAL - K. Schwarz
2  quote, practicing attorney.
3      A.  Right.
4      Q.  That aside, I'm not asking you to
5  render legal advice.  You are a very senior
6  officer of Capital One and you have views as
7  to what constitutes banking and what doesn't,
8  and I'm just exploring what falls on either
9  side of that line for you.  So the question
10 which I think you've largely answered, but I
11 just want to clarify it, is that Mr. Kanas
12 has a home in New York, he has a study in
13 that home, he sits there one night by himself
14 on his, in his reading chair, closes his eyes
15 and starts thinking strategy about once his
16 non-compete expires what parts of Manhattan
17 he would like to open branches in, what types
18 of business lines he would get into, the type
19 of strategy that you engage in, for example,
20 so my question is, if he does that is it your
21 view that he's engaging in banking activity?
22         MR. SCHWARTZ:  Objection, calls for
23 a legal conclusion.
24     A.  Again, I'm not an attorney.  But
25 what I'll tell you is that that in a lot of

Page 330

```
 1    HIGHLY CONFIDENTIAL  - K. Schwarz
 2  ways was the formation of North Fork Bank I
 3  and in a lot of ways will be the creation of
 4  North Fork Bank II.  John --
 5    Q.  So the answer -- I'm sorry.
 6    A.  John was the driving force and,
 7  frankly, decision-maker for almost every
 8  major decision at North Fork Bank I, he was
 9  the driver of the strategy, he will be the
10  driver of the strategy in North Fork Bank II.
11    Q.  So your view is in the nonlawyer
12  capacity that, if he does what I described,
13  he's engaging in banking activity in
14  New York State, correct?
15    A.  Could you describe again?
16    Q.  Yes.  We've gone over two or three
17  times now.
18    A.  Yeah.
19    Q.  He sits in his house, sitting there
20  thinking about the strategic steps he's going
21  to take to open branches in New York State
22  after his non-compete expires.
23    A.  I think technically that's
24  competition, yes.
```

Page 332

```
 9       (Exhibit 78, document, marked for
10  identification, as of this date.)
11    A.  Thank you.
```

Page 331

[redacted]

Page 333

[redacted]

Magna Legal Services

Page 162

1  HIGHLY CONFIDENTIAL  - K. Schwarz
2      A.  Ultimately, yes.
3      Q.  And customers can only come in and
4  conduct banking business once a location is
5  up and running, correct?
6          MR. SCHWARTZ:  Objection to form.
7      A.  Unless you open the doors when you
8  are under construction, customers can only
9  come in, again, the doors don't open unless
10 you have a lease signed and the construction
11 done, so they are all sort of interrelated.
12     Q.  Now, have you read the non-competes
13 or non-compete covenants executed by
14 Mr. Kanas and Mr. Bohlsen?
15     A.  Not in their entirety.
16     Q.  What portions have you read?
17     A.  I've seen portions in the
18 complaint.
19     Q.  So just the portions quoted in the
20 complaint?
21     A.  And I've seen, I've seen a copy of
22 the non-compete.  I haven't read it end to
23 end, but I scanned through it.
24     Q.  What's your, your best recollection
25 as to -- well, strike that.

Page 163

1  HIGHLY CONFIDENTIAL  - K. Schwarz
2          What's your best understanding as
3  to what they prohibit Mr. Kanas and
4  Mr. Bohlsen from doing?
5      A.  From competing in the business of
6  acquiring and managing consumer and
7  commercial banking products in New York,
8  New Jersey and Connecticut.
9      Q.  Can you tell me what you understand
10 consumer banking products to be?
11     A.  I think the business of consumer
12 banking products involves --
13     Q.  I'm sorry, but that's not my
14 question.  What are consumer banking
15 products?
16     A.  But are you trying to get to
17 ultimately my opinion as to what they are
18 restricted from doing or --
19     Q.  No.
20     A.  -- or do you want a sort of lecture
21 on consumer banking products?
22     Q.  No, neither one.  I've already
23 asked you what you understand them --
24     A.  Right.
25     Q.  -- to be precluded from doing.  Now

Page 164

1  HIGHLY CONFIDENTIAL  - K. Schwarz
2  it's a separate question, what are consumer
3  banking products?  And it can be just an
4  itemized list as you understand that term.
5      A.  I would say there are three broad
6  categories there.
7      Q.  Okay.
8      A.  That I already gave you.  Lending,
9  deposits and brokerage are the big ones.
10     Q.  What kind of lending or what kind
11 of loans?
12     A.  Mortgages, home equity, auto loans,
13 personal loans.  You are asking about
14 consumer, right?
15     Q.  Right, right.  How about credit
16 cards?
17     A.  Credit cards would apply, as well.
18     Q.  Now, how about, what is your
19 understanding of what commercial banking
20 products are?
21     A.  Real estate loans, middle-market
22 loans, small business loans, to name broad
23 categories.
24     Q.  Okay.  Let's go back to the time
25 line.

Page 165

1  HIGHLY CONFIDENTIAL  - K. Schwarz
2      A.  Which timeline?
3      Q.  This, I had you on your employ --
4      A.  My personal timeline?
5      Q.  Yeah, your employment.  Now we're
6  post North Fork and you've joined in 2007
7  until October 2009?
8      A.  Right.
9      Q.  You were involved with the deposit
10 and debit group, correct?
11     A.  Correct.
12     Q.  Can you tell me again, and I know
13 you've said this in other context, but what
14 specifically did you once you joined that
15 group?
16     A.  You are talking about the
17 activities or do you want me to give you the
18 description of my, my responsibilities?
19     Q.  Shouldn't they be the same, what
20 you were supposed to do and what you did?
21     A.  One is more detailed.
22     Q.  Just tell me what it is that job
23 entailed.
24     A.  It effectively involved acquiring
25 and managing deposit and debit customers.

Page 166
1  HIGHLY CONFIDENTIAL - K. Schwarz
2      Q.  And how do you do that?  Let me
3  rephrase the question.  In the context of
4  your job...
5      A.  Right.
6      Q.  ...how are debit and credit deposit
7  customers, debit and --
8      A.  Deposit customers, right.
9      Q.  I'm sorry, so let me strike that.
10         In the scope of your employment...
11     A.  Right.
12     Q.  ...at that time, how are debit...
13     A.  Yeah.
14     Q.  ...and deposit customers acquired?
15     A.  So I think it's important to
16 understand sort of the notion of, of managing
17 the P&L in this space, right, which means you
18 are effectively accountable for the bottom
19 line and the financial results.  So if you
20 think about working up from that what are all
21 the different components that go into it,
22 right...
23     Q.  Okay.
24     A.  ...there's revenue and expense.
25     Q.  Right.

Page 167
1  HIGHLY CONFIDENTIAL - K. Schwarz
2      A.  So think of, you know, the expenses
3  that we put into acquiring a customer.  So
4  everything that we've talked about, about,
5  hey, I've got to work with my branch partners
6  who don't own the P&L, did not own the P&L at
7  the time to say, what is the branch strategy,
8  what are we going to do, where are we going
9  to acquire, where are we going to build.
10 Again, that was their responsibility, but
11 they were, they were a performer to the
12 broader sort of P&L segment.
13         What marketing campaigns are we
14 going to run, so everything from, as you
15 said, birth to death within the banking
16 business that related to the deposit P&L was
17 what we were accountable for sort of
18 managing.
19     Q.  I mean, but I guess what I'm
20 asking --
21     A.  Yeah, yeah.
22     Q.  -- and maybe a little more detail
23 than I was asking for, Mr. Schwarz, than I
24 intended to ask.
25     A.  Right.

Page 168
[redacted]
15     Q.  Let me ask you this.  When you say
16 you want to --
17     A.  This is a very interesting topic.
18 I like this.
19     Q.  When you say you want to acquire...
20     A.  Yeah.
21     Q.  ...a debit or credit business,
22 putting aside now profitability or, you know,
23 other factors, you just want to acquire
24 deposit and debit business, does that
25 translate to meaning acquire customers who

Page 169
1  HIGHLY CONFIDENTIAL - K. Schwarz
2  bring that business to the, to the branch?
3      A.  I'm not sure what you mean by
4  putting aside profitability.  It's not really
5  something that we can relate to.
6      Q.  Because I'm not saying
7  profitability --
8      A.  Because that would lead to sort of
9  very irrational and sort of just non,
10 non-business decisions.
11     Q.  Let me, let me go at it this way.
12     A.  Do you see what I mean?
13     Q.  Yeah.  I understand that.
14     A.  Okay.
15     Q.  And we're going to where really I
16 think way more detail than we need to.  Let
17 me give you an example.
18         Okay.  I asked you tell me what it
19 is your job entailed, okay, and you said it
20 effectively involved acquiring and managing
21 deposit and debit customers?
22     A.  Right.
23     Q.  Okay.  How did Capital One or how
24 does Capital One, if it changed during the
25 period tell me...

```
                                    Page 402
 1
 2           C E R T I F I C A T E
 3   STATE OF NEW YORK   )
 4              : ss.
 5   COUNTY OF NEW YORK  )
 6
 7          I, Toni Allegrucci, a Notary Public
 8      within and for the State of New York, do
 9      hereby certify:
10          That KONRAD SCHWARZ, the witness
11      whose deposition is hereinbefore set
12      forth, was duly sworn by me and that
13      such deposition is a true record of the
14      testimony given by the witness.
15          I further certify that I am not
16      related to any of the parties to this
17      action by blood or marriage, and that I
18      am in no way interested in the outcome
19      of this matter.
20          IN WITNESS WHEREOF, I have hereunto
21      set my hand this 24th day of February,
22      2011.
23               _____
24              TONI ALLEGRUCCI
25
```